UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO DE PUERTO RICO, Petitioner, *v.* PUERTO RICO LABOR RELATIONS BOARD, Respondent; PUERTO RICO WATER RESOURCES AUTHORITY, Petitioner, *v.* PUERTO RICO LABOR RELATIONS BOARD, Respondent.

Nos. O-69-208, O-69-197.          Decided September 27, 1971.

*José Vilá Ruiz, Luis F. Candal, Luis M. Rivera Pérez, Marcelino Delgado Medina,* and *Rafael Buscaglia Guillermety* for Puerto Rico Water Resources Authority. *Vicente Ortiz Colón* for U.T.I.E.R. *Gilberto Gierbolini Ortiz, Solicitor General, Celia Canales González, José E. Rodríguez Rosaly,* and *Miguel A. Rivera Arroyo* for respondent.

PER CURIAM: On account of the charges filed by Nemesio Poventud, the Puerto Rico Labor Relations Board issued separate complaints against the Puerto Rico Water Resources Authority and the Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER). The Water Resources Authority was charged with having violated Art. VII, § 9, of the collective bargaining agreement entered into with the (UTIER), failing to appoint Nemesio Poventud, after having selected him to occupy the position in promotion of Relief Operator II at Central Carite, Guayama, Puerto Rico, and also having violated Art. VIII, § 11, of the same collective bargaining agreement, appointing Santos Molina without

the Committee on Adjudication of Positions having taken jurisdiction over the appointment of the position of Relief Operator II after representatives of the union and of the employer did not come into agreement over the appointment in excess of the term which the collective bargaining agreement establishes for said Committee to intervene.

The UTIER was charged in the complaint issued by the Board that the Puerto Rico Water Resources Authority having selected Nemesio Poventud for the vacancy of Relief Operator of Hydroelectric Plant II and defendant not having been in agreement with said selection the latter refused to submit the matter to the Settlement Committee provided in the collective bargaining agreement and took steps and obtained the appointment by the Authority of Santos Molina to occupy said position. For that reason, it is alleged in the complaint that said defendant Union violated Art. VII of the collective bargaining agreement and did not represent Poventud fairly and impartially in the proceeding in connection with the appointment for the position of Relief Operator.

After the complaints were answered, the case was submitted to a Trial Examiner on the grounds of the documentary evidence which appeared in the record. Said officer rendered his report where he concluded that defendants had incurred unfair labor practices within the meaning of subsections 8(1)(b) and 8(2)(a) of the Puerto Rico Labor Relations Act.[1]

The Puerto Rico Labor Relations Board, adopting the findings of fact of the Trial Examiner although not the conclusions of law, issued its "Decision and Order" on July 31, 1969. The order provides:

---

[1] Both subsections declare the violation of the terms of the collective bargaining agreement on the part of the employer as well as by a labor organization as an unfair labor practice.

"ORDER

"Defendant Puerto Rico Water Resources Authority is ordered to:

1) *Cease and Desist from:*

a) Violating the terms of the collective bargaining agreement which it has entered into with the Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER).

2) *Take the following affirmative action:*

a) To offer complainant Nemesio Poventud an equal or similar position to the one adjudicated to Santos Molina.

b) *To compensate* complainant Nemesio Poventud for the wages which he did not receive by reason of the unfair labor practice incurred. This obligation is of solidary nature with the one which is imposed in the same sense on the Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER).

c) To post in conspicuous places of its business copies of the Notice which is included as Appendix A and keep it posted for a period of not less than thirty (30) days.

d) To notify the Chairman of the Board within the term of ten (10) days the measures taken to comply with the affirmative provisions of the Order.

The Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER) is ordered to:

1) *Cease and Desist from:*

a) Violating the terms of the collective bargaining agreement which it has entered into with the Puerto Rico Water Resources Authority.

2) *To take the following affirmative action:*

a) To disregard in this case the provisions about posting positions contained in Art. VII of the collective bargaining agreement.

b) To compensate Nemesio Poventud for the wages which he did not receive on account of the unfair labor practice incurred. This obligation is of solidary character with the one which is imposed in the same sense on the Water Resources Authority.

c) To post for thirty (30) days in places visible to the workers copy of the Notice which is included as Appendix A.

d) To notify the Chairman of the Board within the next ten (10) days after receiving this Report the measures taken to comply with what is ordered herein." (Exhibit E, pp. 8 and 9.)

Both defendants have requested this Court to reverse the afore-transcribed order.

In its Decision and Order, the Board makes a statement of facts as well as of law, which in its judgment, is applicable. Let us see:

### "Statement of Facts

"The briefs of the parties, as well as their allegations during the hearing held in this case on July 3, 1969, establish that the facts are not controverted by any of the parties, and that they appear, also, from the documents submitted jointly in evidence by the parties.

"On December 15, 1964, the Authority published the requirements for the position of Relief Operator of the Hydroelectric Plant II, which included:

"a) To be a graduate from a high school, technical school or its equivalent.

"b) To have knowledge about the functioning and management of a hydroelectric plant.

"c) To have from one to three years of related previous experience.

"d) To pass aptitude tests and medical examination.

"On February 17, 1965, a meeting was held at the office of the Carite Plant between Engineer Eduardo Tuya, Jr., Chief Operator, and Saúl A. Ferrer Víves, President of the Guayama Chapter of the UTIER, for the purpose of selecting the candidate to occupy the required position. The two candidates Santos Molina and Nemesio Poventud, the complainant, who applied for the position were considered. Engineer Eduardo Tuya, Jr., selected Nemesio Poventud 'because he meets *all* the requirements for the position and is qualified to discharge it.' Candidate Santos Molina was rejected by the Authority because he did not meet the education requirement although he had more years of experience in the Authority. The President of the Guayama Chapter of the UTIER was not in agreement with the selection made by the Authority (Exhibit 6). The minutes of the meeting appear signed by both participants.

"On May 4, 1965, Tuya and Ferrer Vives met with Rafael Ledesma, General Operation and Administration Superintendent of the Production and Transmission Division of the Authority, to consider on appeal the selection of complainant to occupy the position in question. The arguments of the representatives of the UTIER and the Authority were analyzed. Ledesma, according to his memorandum of June 2, 1965, stated that in case the evidence of education required for the position and which Santos Molina alleged to have could not be produced 'since Mr. [Ferrer Vives] insisted in the seniority as the only ground for the selection, the case should be submitted to the consideration of the respective Committee on Adjudication of Positions, since despite his seniority, candidate Molina does not meet the requirements for the position' (Exhibit 7). Molina only introduced evidence of having obtained a 'Junior High School Diploma,' or ninth grade (Exhibit 12).

"On June 2, 1965, Rafael Ledesma sent a memorandum to the Personnel Division about the selection of the candidate to fill the position of Operator II at the Carite Plant No. 1. In this memorandum Ledesma pointed out that the UTIER objected to the selection of the Authority although candidate Nemesio Poventud met all the requirements, on the basis that their candidate, Santos Molina, although he does not have the required education is the oldest employee in the Authority. Ledesma pointed out that as Molina had not presented the evidence about the education which he alleged to have, he recommended, to proceed and appoint Nemesio Poventud, in temporary character, and that the case be submitted to the consideration of the Committee on Adjudication of Positions (Exhibit 8).

"The Committee on Adjudication of Positions met to discuss the case of Nemesio Poventud and Santos Molina on July 6, 1965. Since the minutes where the case was being submitted were not signed by Saúl A. Ferrer, the Committee decided to ask the former whether he consented to discuss the case in this Committee. If he did not consent, the case would be remanded in order that the parties could continue discussing this position (Exhibit 9). Ferrer stated that the case should be remanded to Ledesma in order to continue with the discussion about the position. The Committee decided to remand the case to Ledesma so that the discussion about the position would continue.

"On July 9, 1965, the Committee on Adjudication of Positions sent a memorandum to Engineer Jorge Dávila, Administrative Engineer of the Production and Transmission Division, where it was indicated that on the meeting of July 8, 1965, it had been agreed to remand the case submitted on June 2, 1965, about the position of Relief Operator of Hydroelectric Plant II, because Saúl A. Ferrer objected that this case would have been submitted to the Committee since he understood that the same was still open to discussion (Exhibit 10).

"On September 7, 1965, Ledesma referred the question of the position to Tuya, Chief Operator, asking him to discuss it with Ferrer, 'for the purpose of determining what additional material we have for discussion, and see if we can end the same appealing to the Committee if necessary' (Exhibit 13).

"On January 19, 1966, Engineer Eduardo Tuya, Jr., and Saúl A. Ferrer, met at the offices of the Carite Plant. In this meeting they considered the two candidates who originally applied for the position. In the minutes of the meeting it was indicated that the complainant met all the requirements of the position, but had less seniority than Molina. Molina was evaluated considering the years of experience in substitution of the education requirements.* Relying on that evaluation, they accepted Molina as a candidate to fill the position under certain training conditions.

"The UTIER objected to the conditions imposed in the appointment of Santos Molina and submitted the matter to the

---

* "Exhibit 4, submitted jointly by the parties to the Trial Examiner, shows that in June 1962 the Union and the Employer met in the Consulting Board created by the collective bargaining agreement, and made several explanations in the application, interpretation, and performance of the collective bargaining agreement entered into by the Authority and the UTIER. Among other things, the following was agreed:

'E. For the purpose of filling the posted positions which have as a requirement to possess a high school diploma, regular workers who during a period of *not less than three years have satisfactorily discharged* like or *analogous* positions, even though they do not possess said diploma, may be considered to occupy said positions *unless the Authority* determines that on account of the knowledge required by said position it is necessary to possess the same. In every case the worker should meet the other requirements of the position, *possess the necessary academical education* and be capacitated to discharge the same.' (Italics ours.)" (Exhibit E, pp. 4 and 5.)

Settlement Committee so that the latter would decide whether it was proper to adjudicate the position in training (Exhibit 20, p. 8, Report). On September 13, 1967, the Committee issued its decision maintaining the correctness of the conditioned appointment (Exhibit 25, p. 9, Report).

"On February 1, 1968, Eduardo Tuya, Jr., sent Santos Molina a notice of Personnel Action where he notified his promotion, in training, to Relief Operator of Hydroelectric Plant II. (Exhibit 28.) The 'Notice of Personnel Action' of the Authority was perfected on that same day (Exhibit 26).

*Unfair Labor Practices:*

"In the light of these facts, we must decide whether the UTIER and the Employer incurred unfair labor practices within the meaning of the provisions about violation of contract of the Puerto Rico Labor Relations Act.

"The pertinent provisions of the agreement read as follows:

### 'Article VII

'Section 1.—When regular or newly created positions have to be filled, preference will be given, in accordance with the priority and selection order which is established hereinafter, to the regular workers with the longest service in the Authority and who are qualified to discharge such positions and who apply for them.

'Section 2.—For the purpose of giving opportunity to regular workers to apply for vacant or newly created positions, these will be posted specifying in the Spanish language the requirements for the same, the following order of priority being applied . . . .

.    .    .    .    .    .    .    .

'Section 9.—When a vacancy has to be filled within the proper unit the Authority shall discuss with the Union, the representative of the Section and/or the President of the Chapter appearing to discuss about eligible candidates to fill the vacancy in question. The Authority shall notify the appointment to the Union within a period of fifteen (15) calendar days from the date of effectiveness of the same. If the Union is not in agreement with the appointment or the selection made by the Authority, the Union may submit a complaint directly to the Settlement Committee which is

established in this agreement within a period of fifteen (15) days from the date when the Union is notified by the Authority of the appointment made by the latter.'

"If we would strictly abide to the language of these provisions in the light of the agreement of the Consulting Board (Exhibit 4), we would conclude that defendants complied with the agreement and with the law.

"Note how since the first meeting, the one held on February 17, 1965, between Engineer Eduardo Tuya, Jr., and Saúl A. Ferrer Vives, the UTIER questioned the selection made by the Authority (that of Nemesio Poventud) without taking into consideration the element of seniority. It may be reasonably concluded that the UTIER opposed the selection of Nemesio Poventud relying on the aforecited agreement of the Consulting Board of the year 1962. There is no controversy as to the fact that Molina was the senior candidate. His only limitation consisted in not meeting the education requirement. The agreement to which reference has been made by the Consulting Board establishes that the parties, UTIER and the Authority, had decided to substitute the education requirement in those cases where this could be possible.

"Under the terms of this valid agreement of the Consulting Board, it is not possible to decide that Santos Molina was unduly selected by the parties, the UTIER, and the Authority. In substituting the requirement of the high school diploma by the experience of three years in an analogous position* both applicants were in the same condition. Under this situation, the element of seniority came into play, which Santos Molina surpassed as he was the senior employee.

"The statement made by the Trial Examiner at page 10 of his Report under the subtitle Applicable Law to the Facts is not correct. The Trial Examiner states thus:

'Since on February 17, 1965, the Authority selected complainant to occupy said position, over the UTIER's objection, Article VII (9) imposed on the W.R.A. the duty to adjudicate the position to the complainant.'

"Article VII (9) does not compel the Authority to adjudicate the position to the one selected. On the contrary, said article

---

* "Santos Molina discharged the position of Assistant Relief Operator of Hydroelectric Plant, an analogous position to the one in controversy."

provides a procedure for discussion between the UTIER and the Authority by means of which, in the give and take of the collective bargaining, an agreement is reached.

"However, it is mandatory to examine said provisions with full conscience of the rights which they generate and the effects which they convey for all the persons affected.

"The collective bargaining agreements are signed to protect the employees included in the proper unit. Once they are signed, the agreements originate rights for said individual employees.

"Although § 9 of Art. VII contemplates a period of discussion* which culminates in the selection and appointment of one of the applicants, we cannot sanction the unreasonable extension of said discussion period. The facts reveal that in the case of Nemesio Poventud the discussion period was prolonged for more than one year. (On December 15, 1964 the position was posted; on January 19, both parties—union and employer—came into agreement in the selection of Santos Molina.)

"In this case, the unreasonable extension of that discussion period, on the part of the UTIER as well as on the Authority, constitutes a violation of the provisions of the collective bargaining agreement, which prejudiced a beneficiary of said agreement, Nemesio Poventud. The Board would not comply with its tutelar mission in the protection of the workers' rights if in cases like the one at bar it would not look for a just remedy, as our law reads as follows . . .

'The exercise of the rights and the performance of the obligations by the parties to such collective bargaining contracts are therefore subject to such reasonable regulations as may be necessary to effectuate the public policies of this Act.' (Section 1, Subsection 5 of the Puerto Rico Labor Relations Act.)

"In January 1966, the Authority and the UTIER agreed that the appointment should fall on Santos Molina, to whom the Authority planned to extend a conditional appointment. In November of that same year—without the appointment having been perfected—the UTIER appealed before the Settlement

---

* "When a vacancy has to be filled within the proper unit the Authority *shall discuss* with the Union, the representative, etc., appearing." (Article VII, § 9 of the collective bargaining agreement.)

Committee to question the condition which the Authority planned to impose. It calls our attention that the UTIER appealed to the Settlement Committee in the case of the selection of Santos Molina, without his appointment having been made, when in the case of Poventud it did not do the same.

"Wherefore, we decide that defendants violated the collective bargaining agreement in force by unreasonably prolonging the discussion period provided in § 9 of Art. VII. . . ." (Exhibit E, pp. 2 to 8.)

It clearly appears from the Decision and Order of the Board that the violation of the collective bargaining agreement charged to defendants consisted in having unreasonably prolonged the discussion period provided in § 9 of Art. VII of the collective bargaining agreement.[2] However, said § 9, as the Board itself recognizes "contemplates a discussion period which culminates in the selection and appointment of some of the applicants." We recognize that although the collective bargaining agreement does not establish a limit for this period, the same should be a reasonable one. In view of the incidents which occurred in this case, in the procedure of selection and appointment, we cannot conclude that defendants unreasonably extended said selection and appointment period and that they incurred, therefore, an unfair labor practice.

---

[2] Section 9 of Art. VII of the collective bargaining agreement provides:

"Section 9.—When a vacancy has to be filled within the proper unit the Authority shall discuss with the Union, the representative of the Section and/or the President of the Chapter appearing to discuss about eligible candidates to fill the vacancy in question. The Authority shall notify the appointment to the Union within a period of fifteen (15) calendar days from the date of effectiveness of the same. If the Union is not in agreement with the appointment or the selection made by the Authority, the Union may submit a complaint directly to the Settlement Committee which is established in this agreement within a period of fifteen (15) days from the date when the Union is notified by the Authority of the appointment made by the latter."

On the other hand, we do not understand how, even assuming that said period was unnecessarily and unreasonably prolonged, such circumstance may bind defendants to (1) offer Nemesio Poventud an equal or similar position to the one adjudicated to Santos Molina, and (2) compensate said Poventud for alleged earnings which he did not receive when the position under discussion was correctly adjudicated to another person to whom it corresponded pursuant to the terms of the collective bargaining agreement.

It is unnecessary to enter into other considerations since the order of the Board is clearly erroneous and should be reversed.

Judgment reversing the Order object of this review will be rendered.

Mr. Chief Justice Negrón Fernández did not participate in the decision of this case.